# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

**June 8, 2017**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MICHAEL S. PLASO,**
**Claimant Below, Petitioner**

**vs.)    No. 16-0700** (BOR Appeal No. 2051053)
(Claim No. 2012014085)

**CITY OF WEIRTON,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Michael S. Plaso, by Christopher J. Wallace, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. The City of Weirton, by Lisa Warner Hunter, its attorney, filed a timely response.

The issue on appeal is whether cervical disc displacement is a compensable condition of the claim and whether an anterior cervical discectomy and fusion should be approved. On September 4, 2013, the claims administrator denied a request to add cervical disc displacement as a compensable condition. On May 8, 2014, the claims administrator denied authorization for an anterior cervical discectomy and fusion. The Office of Judges affirmed both of the claims administrator's decisions on January 26, 2016. The Board of Review affirmed the Order on June 27, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Plaso, a police officer for the City of Weirton, was involved in a motor vehicle accident in the course of his employment on October 1, 2011. On October 4, 2011, Stephen Mascio, D.O., stated that Mr. Plaso was in his police cruiser when he was hit head on by a drunk

1

driver while working. Although he was wearing his seat belt, he hit his head on the roof of the car. Though he did not lose consciousness, he was foggy after the accident and was taken to the hospital and assessed with a mild concussion. Mr. Plaso had a CT of the cervical spine, head, abdomen, and pelvis. He complained of neck pain and stiffness, bilateral shoulder pain, bilateral lower rib pain, and low back pain radiating down the back of both upper legs. He had loss of train of thought at times, continuous headaches on the left side, and constant ringing in his left ear since the accident. After examination, Dr. Mascio diagnosed a concussion, left-sided tinnitus, tension headaches, strain of the upper arms and shoulders, spasm of the shoulders/neck/back, strain of the lumbar/cervical/thoracic spine, and lumbar radiculopathy. He was given medications and a treatment plan. The claims administrator held the claim compensable for a concussion, shoulder sprain, lumbar sprain, thoracic sprain, and a neck sprain/strain on October 10, 2011.

An MRI performed on October 26, 2011, showed a mild central disc protrusion at the C5-6 and C6-7 without significant stenosis or obvious nerve root compression. There was some mild spurring at these levels and possible spasm. An MRI performed on October 18, 2012, showed a mild central disc protrusion at C5-6 and C6-7 without significant stenosis or change since the October 26, 2011, MRI. A March 5, 2013, evaluation authored by Peter Gerszten, M.D., a neurosurgeon, argued that Mr. Plaso's disc herniations resulted from the trauma of his motor vehicle accident. Dr. Gerszten stated that his surgery revealed pathology consistent with his complaints. Further, the fact that Mr. Plaso woke up the next day with complete resolution of his arm symptoms suggested that the injury was work related and acute in nature.

Jorge Roig, M.D., completed a diagnosis update on August 22, 2013, which listed the primary diagnosis of neck strain and secondary diagnosis of a herniated disc. Mr. Plaso stated that he had neck pain with radiation down his left arm. Dr. Roig opined that the MRI scans support his complaints. On September 4, 2013, the claims administrator denied the diagnostic updated request from Dr. Roig to add displacement of a cervical disc as a compensable component of the claim. Mr. Plaso subsequently underwent an anterior cervical discectomy and fusion at C5-6 and C6-7, which was denied by the claims administrator on May 8, 2014.

On September 25, 2014, Christopher Martin, M.D., completed a record review report. He previously performed two independent medical evaluations on Mr. Plaso and generated several other reports. He was requested by the employer to offer an opinion as to what the current diagnoses are and which are associated with the compensable injury. Dr. Martin opined that Mr. Plaso did not suffer any cervical disc displacement or herniation related to the compensable injury. As a result, he believed the cervical surgery should not be covered under the claim. He noted that there was evidence of pre-existing structural abnormalities in the two levels of the cervical spine.

On January 9, 2015, Bruce Guberman, M.D., completed an independent medical report. Dr. Guberman believed that the disc herniation noted on MRI at C5-6 and C6-7 were caused by the compensable injury. Mr. Plaso was asymptomatic in regard to the cervical spine until that time and did not have any radicular complaints until that injury. The disc herniations at those levels correspond well with the side and location of his radicular symptoms, which also began specifically at that time. Mr. Plaso's symptoms have been consistent with pain, numbness,

tingling, and weakness in his left arm and hand even though not all of the examiners have found reproducible objective neurologic findings. The nature of the injury, the sudden and coincident onset of radicular symptoms and neck pain with the injury, and the consistent findings on the MRI of the cervical spine strongly indicate that the disc herniations, neck pain, and radicular symptoms are all directly causally related to the compensable injury. Dr. Guberman noted that there were degenerative changes that likely predated this injury; however, he opined they were very common and did not correlate well with his other symptoms. Since it is his opinion that the disc herniations and radiculopathy were directly causally related to this injury, and since Mr. Plaso did not improve with extensive conservative treatment, Dr. Guberman agreed surgery was necessary.

On February 18, 2015, Dr. Martin was deposed and opined that the MRI findings suggested that Mr. Plaso's symptoms were not related to the compensable injury. He opined that if an MRI was taken directly before the injury, it would have been similar to the one taken after the injury. He believed the changes seen on the MRI were age-related degeneration. Dr. Martin then discussed the many other conflicting reports and ultimately concluded that those reports supported his position that the herniations were not caused by the compensable injury. Further, because the herniations were not caused by the compensable injury, it was proper for the surgery to not be covered under workers compensation.

David Soulsby, M.D., examined Mr. Plaso on June 8, 2015, and determined that he suffered from degenerative disc disease of the cervical spine with radiculopathy and cervical sprain/strain. He concurred with Dr. Gerszten's opinion that Mr. Plaso suffered from ongoing cervical radiculopathy and that it responded well to surgical management. However, Dr. Soulsby did not agree that the evidence suggested the disc herniations were caused by the compensable injury. Dr. Soulsby found that there were strong objective findings that the herniation predated the injury. Though the surgical intervention appeared to have been necessary and successful, it was performed for a pre-existing condition and was not related to the compensable injury. He agreed with Dr. Martin's reasoning that the presence of degenerative disc changes and bone spurs at the exact levels where the herniation occurred is strong evidence that these herniations are pre-existing. Dr. Soulsby also noted that Mr. Plaso was previously a power lifter, which has a high probability of cervical spine degeneration.

The Office of Judges concluded that Mr. Plaso failed to show that his disc herniations were due to the compensable injury. The Office of Judges noted that pre-injury MRI scans showed pre-existing age-related degeneration of the spine. The Office of Judges also noted that both Dr. Soulsby and Dr. Martin determined that the herniations were not related to the compensable injury. The Office of Judges recognized that Dr. Guberman and Dr. Gerszten believed that the herniations were related to the compensable injury. However, the Office of Judges did not rely on their opinions because the evidence of record more closely aligned with the opinions of Dr. Soulsby and Dr. Martin. Mr. Plaso did suffer from pre-existing degenerative changes and he did not seek to add the herniations to the compensable diagnoses until well after the compensable injury. Because the Office of Judges concluded the disc herniations were not caused by the compensable injury, the surgery to correct the disc herniations was also denied. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

After review, we agree with the consistent decisions of the Office of Judges and Board of Review. While two doctors have opined that the disc herniations could be related to the compensable injury, the majority of the evidence indicates that it was a natural process. The MRI scans, as well as the opinions of Dr. Soulsby and Dr. Martin, support a finding that Mr. Plaso's disc hernations were related to his pre-existing degenerative conditions. It is particularly compelling that Dr. Martin has had the opportunity to evaluate Mr. Plaso multiple times and his opinion has remained the same.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 8, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Margaret L. Workman